IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 23, 2024

**ALEXANDER VANCE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-2274      Angelita Blackshear Dalton, Judge**

_____

**No. M2023-01093-CCA-R3-PC**

_____

Alexander Vance, Petitioner, appeals from the denial of post-conviction relief after this Court and the Tennessee Supreme Court affirmed his convictions. *See State v. Vance*, 596 S.W.3d 229 (Tenn. 2020). On appeal, he argues that the post-conviction court erred in finding that he received effective assistance of counsel at trial despite several alleged areas of deficient performance. After a review of the record and applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and MATTHEW J. WILSON, JJ., joined.

Jacob A. Wilson, Nashville, Tennessee, for the appellant, Alexander Vance.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Ordinarily, on appeal from the denial of post-conviction relief, it is not entirely necessary to belabor the facts that led to the convictions. On occasion, however, the issues presented on the review of the denial of post-conviction relief necessitate a more thorough recitation of the facts from the trial. Petitioner's case is such a case. In 2014, Petitioner and two co-defendants, Joshua and Damonta Maneese,[1] were indicted for one count of first

---

[1] Because both co-defendants have the same last name, we will refer to them by their first names to avoid confusion. We mean no disrespect.

degree murder, one count of felony murder, one count of especially aggravated robbery, and three counts of aggravated assault stemming from the murder of Stephen Milliken. *Id.* at 234. Prior to trial, Joshua's case was severed. Petitioner's counsel filed a motion in limine to exclude Joshua's statements to police from being admitted at trial based on Joshua's "unknown" mental state. *Id.* The trial court granted the motion.

The case proceeded to trial. At trial, the proof indicated that the victim sought to sell some recording equipment. *Id.* at 235. He used his girlfriend's car and was accompanied by his girlfriend, his older brother, and a friend, Prince Myles, to the Trinity Hills apartment complex sale location. *Id.* When they arrived, no one was there to buy the equipment, so the group left. After they left, Joshua called one of the people in the group and told them to return to the apartment complex. The victim and his passengers returned to the apartment complex where a group was waiting in the breezeway. *Id.* The victim and Mr. Myles exited the car to complete the sale. The victim's girlfriend saw one of the men point a gun at Mr. Myles and saw Joshua wave a gun at the victim and Mr. Myles as Joshua walked back up the breezeway away from the car. When the victim got back in the car, he told the occupants that he had been robbed. *Id.* As they pulled away from the apartment complex, the victim's girlfriend heard Joshua tell "Cuz" to "shoot at them." Shots were fired. The victim was hit and died from a gunshot wound. *Id.* The victim's girlfriend identified Joshua in a photo lineup prior to trial and saw a man whom she knew as Joshua's brother at the scene. She could not identify Damonta or Petitioner in a photo lineup or at trial. The victim's brother also placed Joshua at the scene and identified both Joshua and Damonta from photo arrays but could not identify Petitioner prior to or at trial. *Id.* at 237.

At trial, Mr. Myles claimed that he could not recall what happened on the day of the incident. However, Mr. Myles gave conflicting information during several recorded interviews to the police before trial. In one interview he claimed he did not know who shot at the car. *Id.* at 238. In a second interview, he identified Joshua and Damonta from a photo lineup but claimed that Joshua was not at the scene. In a third interview, Mr. Myles stated that he knew all three men at the scene and identified Petitioner as the man with the gun. *Id.* at 239.

Petitioner's cousin testified at trial that Petitioner bragged during an argument that he had "one n***** under belt" and threatened that Petitioner's cousin could "end up like that [ ] T Hill. . . ." Another witness testified that Petitioner had some music equipment he was trying to sell to pay for his child's Christmas presents. *Id.*

The lead detective, Andrew Davis, testified at trial. *Id.* at 240. He connected Petitioner to Mr. Myles and the victim from Petitioner's phone records, which indicated a call between Petitioner's phone and Mr. Myles's phone immediately after the shooting. *Id.*

- 2 -

During cross-examination, Damonta's lawyer engaged in the following colloquy with Detective Davis:

Q. Is it fair to say that Mr. Damonta Meneese [ ] is only a defendant because of being placed at the scene by the three eyewitnesses?

A. No.

Q. What else has you, makes you believe he is involved? There is no DNA evidence, correct, the DNA evidence actually says his DNA was not present; is that correct?

A. That's correct.

Q. And then there was no fingerprint evidence, yet, [the victim's girlfriend] after some time says he was there; is that correct?

A. That's correct.

Q. And [the victim's brother] says he was there?

A. (Nodded up and down.)

Q. And then Mr. Myles, which we talked eventually said he was there?

A. Correct.

[Petitioner's] lawyer pursued a similar line of questions, asking Detective Davis, "It would appear from, from what had been testified to that with the exception of Neno everyone else implicated into this were directly or indirectly the product from Prince Myles, correct." Detective Davis answered, "Not, not completely, no." The following colloquy ensued:

Q. Well, I mean, who else is there? I mean, [the victim's brother] . . . has admitted to this jury that all of his information that implicated [Petitioner] came from Mr. Myles. Now, [the victim's girlfriend] didn't give you the name [of Petitioner] that night, did she?

A. Not, no, not that I recall.

. . . .

Q. Okay.  Now, did you look for anybody else with [Petitioner's name] that could have been part of this?

A. No, well, no, when I came on [Petitioner] was the name that I was given that Prince Myles had obtained for Detective Middleton.

Q. Okay.  So here again we are relying on Prince Myles['s] information.  You didn't go back and double-check?  I mean, theoretically, y'all have got all of this stuff on computer now, don't you, people that are booked and convicted and this sort of thing?

A. Right.

Q. . . . .  [A]nd so you could have gone in there and said given the height and weight and the [name of Petitioner] and it would have generated some names, wouldn't it?

A. Correct.

Q. But that wasn't done because you were going on what Detective Middleton had amassed up to that point in time?
A. Yeah.  I'm not, I'm not aware of [sic] that was done or not.

Q. Okay.  But there is nothing in the record to indicate that it was done—

A. Correct.

. . . .

After the cross-examination of Detective Davis concluded, the State requested a bench hearing.  While the jury was out, the prosecutor asserted that both defense lawyers had implied through their questions to Detective Davis that the only identification of [Petitioner] and Damonta as perpetrators had come from Mr. Myles.  The prosecutor then stated that 'the severed out co-defendant, Joshua Meneese, made a statement to Detective Davis that implicated himself and both of these other two defendants in this crime and gave him specific information about the three of them committing this crime and the roles that they played.'  The prosecutor asserted that defense counsel had opened the door to the admission of Joshua's statement.

- 4 -

Both defense lawyers objected. Counsel for Damonta argued that he had not opened the door through his questions; stated that the inadmissible hearsay sought by the State "is not just inadmissible hearsay, it is inadmissible hearsay because he is not here"; and argued that the severed codefendant's statements were inherently unreliable because his trial had been severed due to questions about his competence. [Petitioner's] lawyer pointed out that he had filed a motion in limine requesting the exclusion of Joshua's statements, which the trial court had granted. [Petitioner's] lawyer also argued that, if Joshua "was incompetent on 12-26-12 we are entitled to let the jury hear that and argue about it, even if he said something, according to our experts you can't rely on it, because he is not competent." [Petitioner's] lawyer also agreed with the arguments that Damonta's lawyer made.

In summary, the arguments made by defense counsel at trial boiled down to four objections to the evidence sought by the prosecutor: (1) the trial court had granted a motion in limine regarding Joshua's statements; (2) the sought-after evidence was inadmissible hearsay; (3) the statements had been made by an incompetent declarant; and (4) they had not opened the door during cross-examination to this otherwise inadmissible evidence. Although counsel for Damonta made a passing reference to the fact that Joshua was "not here," he did not mention the confrontation clause nor his lack of opportunity to have cross-examined Joshua previously. The next statements that Damonta's lawyer made were "the entire statement [by Joshua] itself is being called into question because of his competence' and '[s]o it is not just a matter of hearsay, we don't even know if this statement is true or even credible because he is incompetent." [Petitioner's] lawyer, like Damonta's lawyer, did not refer to his client's constitutional rights of confrontation.

The trial court asked the prosecutor if there was a "limited question that [she] could ask [Detective Davis] without getting into a lot of other things about this incompetent defendant who is not on trial. . . ." The prosecutor suggested that she ask Detective Davis whether, "[o]ther than Prince Myles[,] were you able to interview another person with personal knowledge who was at the scene who also implicated these two defendants." Damonta's lawyer continued to object. He argued that Joshua's statement was not reliable because his competency had not been determined. He also argued that, because Joshua's 'statement was given without an attorney,' they would "have to litigate the circumstances around that statement, whether it was voluntary. . . ." He added that Joshua was "not just a witness he is a codefendant and the law is clear if a codefendant implicates another

- 5 -

codefendant then there has to be other evidence that corroborates with that. . . ." [Petitioner's] lawyer agreed with these contentions.

*Id.* at 242-43. On redirect, the State asked Detective Davis the following:

Q. Okay. And then finally the most important question I will ask you, other than Prince Myles was there a witness with independent and personal knowledge who was at the scene who implicated Damonta Meneese in this case?

A. Yes.

Q. Was there, other than Prince Myles, was there a witness with independent and personal knowledge who was at the scene and implicated [Petitioner] in this case?

A. Yes there was.

*Id.* at 242-44.

Neither Petitioner nor his co-defendant presented any proof. During rebuttal closing argument, the State made several references to Detective Davis's mention of the unidentified witness. *Id.* at 244. There were no objections by counsel for Petitioner during closing argument and there was not a request for a mistrial.

Petitioner and Damonta were convicted of the lesser included offense of second degree murder, felony murder, especially aggravated robbery, and three counts of aggravated assault. *State v. Vance*, No. M2017-01037-CCA-R3-CD, 2018 WL 5840686, at *1 (Tenn. Crim. App. May 15, 2018), *aff'd*, 596 S.W.3d 229 (Tenn. 2020). The trial court merged the second degree murder conviction into the felony murder conviction and sentenced Petitioner and Damonta to an effective sentence of life imprisonment plus 21 years. *Id.*

Petitioner filed a motion for new trial, arguing that his Confrontation Clause rights were violated when Detective Davis alluded to the out-of-court statements of Joshua. *Vance*, 596 S.W.3d at 245. The trial court denied the motion, explaining that its ruling was based on the theory of "curative admissibility because the door had been opened for the admission of evidence which otherwise would have been excluded." *Id.* This Court determined that the trial court did not abuse its discretion in "ruling that [Petitioner and Damonta] opened the door to the use of [Joshua's] statement to prevent the impression only a single witness identified the two Defendants as participants in the crime." *Vance*,

2018 WL 5840686, at *6. This Court specifically rejected Petitioner's Confrontation Clause argument, determining that he was not entitled to relief because he opened the door to the testimony. *Id.*

On appeal to the Tennessee Supreme Court, Petitioner set forth several issues, including whether the doctrine of curative admissibility permitted a testimonial hearsay statement to be admitted at trial in light of *Crawford v. Washington*, 541 U.S. 36 (2004). *Vance*, 596 S.W.3d at 246. The supreme court directed the parties to answer two additional questions: (1) whether plenary or plain error review applied to the confrontation clause issue, when Petitioner included it in his motion for new trial but contemporaneously objected at trial on other grounds; and (2) whether the admissibility of the evidence was controlled by the doctrine of curative admissibility.

The court determined that Petitioner's counsel opened the door for the State to introduce evidence to correct the misleading impression created by the cross-examination of the detective. *Id.* at 252. However, the court concluded that despite the defense opening the door, the trial court erred by allowing the State to adduce the testimony on redirect. The court determined that the evidence had a prejudicial effect that "substantially outweighed" the misleading impression created during cross-examination because "Detective Davis' testimony that an unidentified eyewitness had implicated [Petitioner] similarly called for the jury to speculate about who the eyewitness was and, more significantly, offered the jury absolutely no indication about the reliability of this person's statement or the proper weight to accord it." *Id.* Despite the improper introduction of the testimony, the court analyzed the Confrontation Clause claim for plain error, concluding that plenary review was not appropriate when Petitioner included the ground in his motion for new trial but contemporaneously objected on other grounds. *Id.* at 253. The court concluded that Petitioner failed to prove that substantial justice required relief and failed to establish that "absent the alleged error, the outcome of his trial probably would have been different." *Id.* at 254-55. After reviewing the proof presented at trial, the court stated, "[w]e are convinced that the jury probably would have convicted [Petitioner] as it did . . . even had it not heard the testimony about the unidentified eyewitness." *Id.* at 255-56. The court utilized plenary review to determine whether the trial court erred by admitting Detective Davis's testimony about Joshua's statement when his competence was at issue and whether the trial court erred by admitting testimony earlier ruled inadmissible in a motion in limine. As to those issues, the court noted that it had already determined the trial court erred in allowing Detective Davis to testify about the unidentified eyewitness statement. However, after concluding that substantial justice did not require plain error relief, the court likewise concluded that the trial court's error was harmless under plenary review. *Id.* at 257. As a result, Petitioner's convictions and sentences were affirmed.

Petitioner filed a timely pro se petition for post-conviction relief. In that petition, he alleged that trial counsel was ineffective for failing to challenge the out-of-court statements on constitutional grounds. The post-conviction court appointed counsel and an amended petition was filed. In the amended petition, Petitioner argued that trial counsel was ineffective by opening the door to the inadmissible evidence by ineffective cross-examination and by failing to move for a mistrial based on the State's repeated references to that evidence during closing argument. Petitioner also argued that cumulative error relief was warranted because of trial counsel's deficiencies.

*Testimony at the Post-conviction Hearing*

At the post-conviction hearing, trial counsel testified that he was admitted to practice law in Tennessee in 1975 and that for 20 to 25 years prior to Petitioner's case approximately 99 percent of his practice was devoted to criminal law. Trial counsel secured a private investigator in Petitioner's case and recalled that the investigator acted as an intermediary between him and Petitioner for the exchange of minor information about the case, like discovery or photographs.

Trial counsel testified that after Joshua was declared incompetent, he filed a motion in limine to exclude any statements made by Joshua. The trial court granted that motion. Trial counsel relayed this information to Petitioner. Trial counsel knew that Mr. Myles' testimony was central to the State's case, so he planned to argue to the jury that the State was asking the jury to convict "on the basis of what [Mr. Myles] told [them]." Trial counsel pointed out that Mr. Myles was not the best witness, because he recanted his prior statements to police in which he identified Petitioner. He explained that Mr. Myles was "all over the map . . . recanting and then recanting his recantations and just back and forth like a tennis ball."

Trial counsel admitted that the State did not question Detective Davis about Joshua's statements during direct examination. Trial counsel admitted that on cross-examination, he asked Detective Davis if he could confirm that Mr. Myles' statements were the only evidence implicating Petitioner. Trial counsel admitted that his question opened the door for the State to ask Detective Davis if the State relied on one single eyewitness during its investigation. Trial counsel testified that he did not intend to open the door but was attempting to stick with the trial strategy of discrediting Mr. Myles.

Trial counsel explained that during a jury-out hearing, the trial judge discussed two avenues under which he could interpret the question, including curative admissibility and opening the door. Trial counsel was under the impression that the trial judge conflated the two theories and blended them.

Trial counsel also insisted that he and counsel for Damonta objected to the trial court's decision to allow the State to question Detective Davis further but that the trial court ultimately allowed the State to ask Detective Davis one final question. The State was permitted to ask whether there was "a witness with independent personal knowledge who was at the scene who implicated the two codefendants." Trial counsel admitted that he failed to object based on the Confrontation Clause and that he "fumbled the ball" by failing to make this objection. He acknowledged failing to object was not a strategic decision.

Trial counsel also admitted that he did not object during the State's closing argument when counsel for the State mentioned an "independent outside observer" on three separate occasions. Trial counsel did not think that there was a justifiable reason to object because the trial court let the testimony into evidence. Similarly, trial counsel did not move for a mistrial because he did not "think there was a basis for a mistrial especially given the fact that the [trial] [c]ourt had already opined that I opened the door, that it was my fault that it was coming in."

Petitioner testified that he only met with trial counsel on three or four occasions prior to trial and that the investigator visited him one time. During those visits, there was never a discussion of a plea offer. Petitioner recalled that trial counsel advised him against testifying at trial. Petitioner agreed that this was good advice. Petitioner claimed that he did not know that Joshua's case was severed until the day of his trial but admitted that trial counsel informed him that Joshua's statements would be excluded. Petitioner agreed that the trial strategy was to attempt to discredit the testimony of Mr. Myles.

On cross-examination, Petitioner admitted that in addition to meeting him at the jail, he saw trial counsel at each of the trial dates prior to trial. Petitioner did not recall having 13 scheduled court dates prior to trial.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court denied relief. In the order, the post-conviction recounted the factual and procedural history leading up to the post-conviction hearing as well as the testimony presented at the hearing. The post-conviction court noted that the "primary ground" Petitioner alleged was ineffective assistance of counsel, specifically regarding trial counsel's "opening the door to the introduction of inadmissible evidence," "fail[ing] to object based on [a] violation of Federal and State Confrontation Clauses," and trial counsel's failing to move for a mistrial.

With regard to the introduction of inadmissible evidence, the post-conviction court accredited the testimony of trial counsel, in that "his intent in questioning Detective Davis . . . was to discredit the testimony of Prince Myles, and was not intended to open the door. . . ." The post-conviction court found that trial counsel did not "intend[] to mislead the

jury" but instead "employed an informed strategic choice based on adequate preparation." The post-conviction court noted that the strategy "unfortunately failed" but "did not establish unreasonable representation" and that as a result, Petitioner failed to demonstrate counsel was ineffective. Moreover, the post-conviction court noted that even if counsel was determined ineffective, Petitioner could not show prejudice because the supreme court had already determined on plain error review that "the jury probably would have convicted [Petitioner] as it did solely on the basis of this proof, even had it not heard the testimony about the unidentified eyewitness." *Vance*, 596 S.W.3d at 256. In other words, Petitioner failed to demonstrate that he was prejudiced by the cross-examination of Detective Davis.

Likewise, the post-conviction court determined that Petitioner was not entitled to post-conviction relief on the basis that trial counsel failed to object to the statement on Confrontation Clause grounds. Specifically, the post-conviction court found trial counsel's admitted failure to object based on the Confrontation Clause a "deficiency in his representation of [Petitioner] at trial" but that it did not result in prejudice to the defense. The post-conviction court noted that even though trial counsel failed to object, Petitioner was not denied appellate review of the Confrontation Clause issue because the supreme court determined Petitioner was not entitled to plain error review of the issue.

With respect to trial counsel's failure to move for a mistrial, the post-conviction court determined that trial counsel "made an informed tactical decision" and that Petitioner failed to demonstrate trial counsel was ineffective. Regarding trial counsel's alleged failure to maintain contact, the post-conviction court accredited the testimony of trial counsel who stated that he and Petitioner met adequately to prepare for trial and determined that Petitioner did not show clear and convincing evidence that trial counsel performed deficiently. Finally, the post-conviction court declined to find cumulative error required reversal.

Petitioner appealed the denial of post-conviction relief. The notice of appeal was untimely, but this Court waived the timely filing in the interest of justice.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred in finding that Petitioner received effective assistance of counsel and/or that cumulative error did not entitle him to relief. Specifically, Petitioner insists that trial counsel was ineffective because counsel opened the door to the introduction of inadmissible evidence, failed to make a timely objection to the admission of that evidence on the basis of the Confrontation Clause, and failed to move for a mistrial. The State disagrees. The State argues that Petitioner has not established that counsel was ineffective and has failed to "prove prejudice from the three alleged areas of deficiency," noting that the Tennessee Supreme

Court "held that the admission of the previously excluded evidence caused Petitioner no prejudice." As a result, the State insists that Petitioner could not prove both prongs of *Strickland* necessary to receive post-conviction relief.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the

components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

## A. Opening the Door

Petitioner argues that trial counsel was ineffective for "opening the door to the introduction of previously inadmissible evidence by ineffective questioning of a State witness." After recounting the events that occurred at trial, Petitioner notes that the supreme court concluded the trial court erred in allowing the State to ask Detective Davis about Joshua's statements and that the State should not have referenced the statements in closing argument. Petitioner insists that trial counsel had "no strategic decision" for opening the door and trial counsel's deficiency in this regard resulted in prejudice. The State disagrees, pointing to the post-conviction court's ruling that trial counsel was pursuing a trial strategy to prove that any error in performance did not amount to a deficiency. The State also argues that because the supreme court declined relief under plain error, Petitioner cannot now establish prejudice in the context of *Strickland* that would entitle him to post-conviction relief.

As we explained above in the recitation of the facts and procedural history, both this Court and the Tennessee Supreme Court reviewed this issue on direct appeal through the lens of plain error and declined to provide Petitioner with relief, determining that the door was opened "for the State's introduction of proof sufficient to correct the misleading impression created by the cross-examination of Detective Davis." *Vance*, 596 S.W.3d at 252. Here, in the context of post-conviction relief, the post-conviction court accredited the testimony of trial counsel that his strategy was to discredit the testimony of Mr. Miles and that he did not intend to open the door to the inadmissible testimony. The post-conviction court deemed this a "failed" trial strategy that was "employed [from] an informed strategic choice based on adequate preparation." Of course, we will not reweigh the evidence or substitute our own inferences for those made by the post-conviction court. *Fields*, 40 S.W.3d at 456. While ultimately unsuccessful, we will not second-guess a reasonable trial strategy or tactical decision. *Granderson*, 197 S.W.3d at 790. The evidence does not preponderate against this finding by the post-conviction court that trial counsel's performance was not deficient. Because Petitioner failed to prove deficiency, there is no need for us to determine whether trial counsel's opening the door resulted in prejudice to Petitioner.

## B. Confrontation Clause

Next, Petitioner argues that trial counsel was ineffective for failing to object to the testimony about Joshua's out-of-court statements on the basis of the Confrontation Clause. The State argues that this claim fails where the supreme court denied relief on direct appeal because Petitioner failed to show prejudice necessary to establish plain error. Additionally, the State argues that the record preponderates against the post-conviction court's finding that trial counsel was deficient for failing to object.

On direct appeal, this Court specifically rejected Petitioner's Confrontation Clause argument, determining that he was not entitled to relief because he opened the door to the testimony. *Vance*, 2018 WL 5840686, at *6. The supreme court found that trial court erred by allowing the State to question Detective Davis on redirect but that the issue could only be reviewed via plain error review because trial counsel failed to specifically object on Confrontation Clause grounds. *Vance*, 596 S.W.2d at 254. Turning to plain error review, the court concluded Petitioner did not establish that substantial justice required relief or that "absent the alleged error, the outcome of his trial probably would have been different"; in other words, Petitioner failed to show prejudice. The court noted that while Myles was the only testifying eyewitness to identify Petitioner, there was "significant" additional incriminating evidence to support the conviction such that the jury "probably would have convicted [Petitioner] . . . even had it not heard the testimony about the unidentified witness." *Id.* at 255-56. The court noted that trial counsel "launched a vigorous attack" on

the credibility of Myles and concluded that his reluctance to identify Petitioner was likely based on fear. *Id.* at 256. The court also disagreed that jurors "necessarily" concluded the unidentified witness was Joshua or that Petitioner was prejudiced because the jury gave significant weight to the testimony of Detective Davis. *Id.* Lastly, the court noted that a conclusion that substantial justice requires relief would imply a significant probability that the jury would have acquitted the Defendant had the disputed testimony not been admitted. *Id.*

Because of the arguments presented by the parties on appeal, assessing prejudice necessitates a discussion of the relationship between plain error prejudice and the *Strickland* standard for prejudice because the State argues that a petitioner who failed to establish plain error on direct appeal cannot ever establish prejudice in the context of post-conviction. Under the prejudice prong of *Strickland*, a petitioner is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* The *Strickland* Court rejected two other possible standards for establishing prejudice, commenting that while it was not enough for the defendant to show that the alleged errors "had some conceivable effect on the outcome of the proceeding," the defendant was not required to show that the errors "more likely than not altered the outcome in the case." *Id.* at 693. The Court rejected these standards because "virtually every act or omission of counsel" would meet the test of having "some conceivable effect on the outcome of the proceeding." *Id.* Likewise, the Court noted that an outcome-determinative test, requiring that "counsel's deficient conduct more likely than not altered the outcome in the case," was also inappropriate. *Id.* In so deciding, the Court reasoned that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

With the standards for establishing prejudice in the post-conviction context in mind, we now examine what is necessary to obtain relief via plain error review in Tennessee. In the context of plain error review, the defendant bears the burden of persuading the appellate court that all five of the following prerequisites are satisfied:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*State v. Dotson*, 450 S.W.3d 1, 49 (Tenn. 2014) (quoting *State v. Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007)). "If a defendant fails to establish any of these criteria, an appellate court

must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." *Vance*, 596 S.W.3d at 254 (quoting *Minor*, 546 S.W.3d at 67). "For a 'substantial right' of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings." *State v. Rimmer*, 623 S.W.3d 235, 278 (Tenn. 2021) (quoting *State v. Maddin*, 192 S.W.3d 558, 562 (Tenn. Crim. App. 2005)). The appellate court rules have codified the common-law plain error doctrine, which allows an appellate court to "consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This is the same type of inquiry as the harmless error analysis, also found in Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. *State v. Maddin*, 192 S.W.3d 558, 562 (Tenn. 2005); *United States v. Olano*, 507 U.S. 725, 732-37 (1993).

We acknowledge that there are cases likening the *Strickland* prejudice standard to the plain error standard, even going as far as calling them, "essentially the same." *Mathis v. State*, No. M2006-02525-CCA-R3-PC, 2008 WL 1850800, at *10 (Tenn. Crim. App. Apr. 25, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008). However, a panel of this Court recently concluded:

> a denial of plain error relief on direct appeal based on a petitioner's failure to show that the error 'was so significant that it probably changed the outcome of the trial' does not necessarily preclude a finding of prejudice under *Strickland*. The standards are similar but not identical. A defendant is not entitled to plain error relief unless he can show that "substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial." *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)) (internal quotations omitted). Under *Strickland*, a petitioner must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694.
>
> *Strickland* requires a slightly lower showing of prejudice than plain error. In *Harrington v. Richter*, the United States Supreme Court explained that there is a difference between *Strickland's* prejudice standard and a more-probable-than-not standard. 562 U.S. 86, 111-12 (2011). Under *Strickland*, 'a defendant need *not* show that counsel's deficient conduct more likely than not altered the outcome in the case' to establish prejudice. *Strickland*, 466 U.S. at 693 (emphasis added). But under plain error, a defendant must show exactly that. *Hatcher*, 310 S.W.3d at 808. To be plain, an error must have

- 15 -

'probably,' or more likely than not, changed the outcome. *See Kilpatrick v. Bryant*, 868 S.W.2d 594, 603 (Tenn. 1993) (using 'probably' and 'more likely than not' interchangeably). Though this difference 'is slight and matters 'only in the rarest case,'' it is possible for trial counsel's failure to object to an error to create a 'reasonable probability' of a different outcome without the error being 'so significant that it probably changed the outcome.' *Harrington*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

*Edwards v. State*, No. E2023-00410-CCA-R3-PC, 2024 WL 3311438, at *9 (Tenn. Crim. App. July 5, 2024). We agree with this rationale.

Occasionally, there are cases where a defendant seeks plain error review and the record does not clearly establish what occurred in the trial court, that a clear and unequivocal rule of law was not breached, or that the accused waived the issue for tactical reasons. In those cases, the appellate court typically stops its plain error review after determining that merely one of these factors cannot be proven, declining to consider the remaining factors. In these cases in particular, a finding that a defendant is not entitled to plain error review or relief does not affect a later-arising post-conviction claim on the basis of prejudice because the appellate court likely made no finding with regard to prejudice in the plain error context.

In some cases, however, the very reason for denial of plain error relief is a finding that a defendant failed to show prejudice. This is often the case when an appellate court denies plain error relief because a defendant failed to show that a substantial right of the accused was affected or that consideration of the issue was necessary to do substantial justice. This is exactly what happened in Petitioner's case. The supreme court determined Petitioner was not entitled to plain error review because he failed to establish that substantial justice required relief. *Vance*, 596 S.W.3d at 256. The court found there was not "a significant probability that the jury would have acquitted [Petitioner] had the disputed testimony not been admitted." *Id.* While there are circumstances we can envision where a defendant who failed to establish prejudice for plain error relief would also fail to establish prejudice under *Strickland*, we can also envision, in the rare case, the opposite scenario where a defendant failed to establish prejudice necessary to establish plain error relief but manages to establish the lower *Stickland* standard of prejudice. In other words, a failure to show prejudice in the plain error context does not invariably preclude the finding of prejudice on post-conviction review.

We turn now to our review of this issue in the present case, whether Petitioner established both prongs of *Strickland*. Here, the post-conviction court first determined that trial counsel was deficient for failing to object on Confrontation Clause grounds. This is a

- 16 -

conclusion of law which we review de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

The Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution afford a criminal defendant the right to confront witnesses against him. U.S. Const. amend. VI; Tenn. Const. art. 1, § 9. However, a defendant's constitutional right to cross-examine witnesses remains subject to general rules of relevance and concerns such as the presentation of cumulative or marginally relevant information. *See* Tenn. R. Evid. 402, 403; *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. 1994). Ultimately, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fenstereer*, 474 U.S. 15, 20 (1985); *see State v. Rimmer*, 623 S.W.3d 235, 290 (Tenn. 2021). Further, there is no ineffective assistance of counsel where trial counsel fails to preserve a fruitless argument. *Williams v. State*, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980); *see Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008).

In this case, the trial court granted a motion in limine to exclude Joshua's statements from trial. During the cross-examination of Detective Davis, counsel for Petitioner opened the door to a question about whether Mr. Myles was the only witness who implicated Petitioner and Damonte in the crime. Counsel for Petitioner objected to further questioning including any mention of Joshua's statement on multiple grounds, including: (1) that the trial court had already ruled on the motion in limine; (2) that the evidence was hearsay; (3) that the statements were made by an incompetent declarant; and (4) that counsel had not opened the door to the otherwise inadmissible evidence. The supreme court found that the trial court's allowing Detective Davis to testify on redirect about the unidentified eyewitness statement implicating Petitioner was error even though trial counsel opened the door to the testimony because the "prejudicial impact substantially outweighed the misleading impression created by the defense's cross-examination," but that under plain error review of whether the error violated Petitioner's Confrontation Clause rights there was no prejudice and under plenary review the error was harmless. *Vance*, 596 S.W.3d at 252, 256-57.

We disagree with the post-conviction court's conclusion that trial counsel was deficient. Even though trial counsel admitted that he "dropped the ball" by failing to object on Confrontation Clause grounds, trial counsel remained a zealous advocate, objecting on several grounds to any further questioning of Detective Davis and ultimately convincing the trial court to narrow the State's questioning on redirect. In evaluating performance for deficiency, "we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006)

(citing *Strickland*, 466 U.S. at 689). In our view, trial counsel's failure to object based on the Confrontation Clause was not deficient. Therefore, he is not entitled to post-conviction relief.

Moreover, Petitioner failed to show prejudice because he has not shown a reasonable probability that the trial outcome would have been different had trial counsel objected to Detective Davis's testimony based on the Confrontation Clause. On direct appeal, the supreme court noted that it was "convinced" the jury would have probably convicted Petitioner even without the testimony. *Vance* 596 S.W.3d at 256. We agree. Petitioner's case is one of those cases where the facts led to the failure to prove prejudice in the plain error context as well as the post-conviction context. There was ample evidence establishing Petitioner's guilt.

## C. Mistrial

Petitioner argues that trial counsel was ineffective for failing to move for a mistrial when the State referenced Joshua's statement three times during closing argument. The State argues that Petitioner's argument is foreclosed by the supreme court's finding that Petitioner was not entitled to plain error review because he failed to show prejudice on direct appeal. Additionally, the State contends that Petitioner failed to show that trial counsel was ineffective or that he was prejudiced by counsel's failure to seek a mistrial.

Here, the post-conviction court accredited the testimony of trial counsel that he "didn't think [the statements were] a basis for a mistrial especially given the fact that the Court had already opined that I had opened the door, that it was my fault that it was coming in." The post-conviction court concluded that the "informed tactical decision" made by trial counsel was not ineffective.

A mistrial is appropriate "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Jones*, 568 S.W.3d 101, 126 (Tenn. 2019) (quoting *State v. Reid*, 164 S.W.3d 286, 341-42 (Tenn. 2005)). A mistrial will normally be declared only upon a showing of manifest necessity. *Id.* Accordingly, a mistrial is an appropriate remedy when a trial cannot continue or a miscarriage of justice would result if it did. *Id.* Determining whether to request a mistrial is a strategic decision, and considerable deference is given to trial counsel when analyzing the effectiveness of counsel's assistance regarding trial strategies. *See Wiley v. State*, 183 S.W.3d 317, 331-32 (Tenn. 2006); *see also Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). The evidence does not preponderate against the post-conviction court's conclusion that trial counsel's decision not to request a mistrial was a strategic decision.

## D. Cumulative Error

- 18 -

Petitioner argues that cumulative error entitles him to relief. Cumulative error "does not apply in [a] post-conviction case[] where the petitioner has failed to show any instance[s] of deficient performance by counsel." *Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) (citing *Reinsberg v. State*, No. W2019-02279-CCA-R3-PC, 2021 WL 2176887, at *4 (Tenn. Crim. App. May 3, 2021), *no perm. app. filed*), *perm. app. denied*, (Tenn. Sept. 11, 2023). Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE